UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| KENNETHA MITCHELL, individually and on behalf of all others similarly situated,<br><br>v.<br><br>PEPSICO, INC. | Case No. _____<br>Fed. R. Civ. P. 23 Class Action |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

### Summary

1. Like many other companies across the United States, PepsiCo's timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout PepsiCo's organization.

3. As a result, PepsiCo workers in Florida were not paid the minimum wage for all hours worked or were not paid their promised wages for all hours worked after the onset of the Kronos hack.

4. Kennetha Mitchell is one such PepsiCo worker.

5. PepsiCo could have easily implemented a system for recording hours and paying wages to non-exempt employees until issues related to the hack were resolved.

6. But it didn't. Instead, PepsiCo used prior pay periods or reduced payroll estimates to avoid paying all wages owed to these employees.

7. PepsiCo pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

8. The burden of the Kronos hack was made to fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

9. PepsiCo's failure to pay all proper minimum wages for all hours worked violates the Florida Constitution, Art. X, § 24(a).

10. PepsiCo's failure to pay all promised wages for all hours worked is a breach of agreement with these employees under Florida law.

11. Mitchell brings this lawsuit to recover these unpaid overtime wages and other damages owed by PepsiCo to her and the non-overtime-exempt workers like her, who were the ultimate victims of not just the Kronos hack, but also PepsiCo's decision to make its front line workers bear the economic burden for the hack.

12. This action seeks to recover the unpaid wages and other damages owed by PepsiCo to all these workers, along with the penalties, interest, and other remedies provided by Florida law.

## JURISDICTION & VENUE

13. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between the Parties and the amount in controversy exceeds $75,000.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District.

15. Mitchell worked for PepsiCo in this District.

## PARTIES

16. **Plaintiff Kennetha Mitchell** is a natural person.

17. Mitchell is a resident and citizen of Florida.

18. Mitchell has been, at all relevant times, an employee of PepsiCo.

19. Mitchell worked for PepsiCo from July 2018 to March 2022.

20. At all relevant times, Mitchell worked for PepsiCo in Florida.

21. Mitchell represents a class of similarly situated workers under Florida law pursuant to Federal Rule of Civil Procedure 23. This "Florida Class" is defined as:

> **All current or former hourly and salaried employees of PepsiCo, including its subsidiaries and alter egos, who were not exempt from overtime pay and who worked for PepsiCo in Florida at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

22. Throughout this Complaint, the Florida Class Members are also referred to as the "Similarly Situated Workers."

23. **Defendant PepsiCo, Inc. ("PepsiCo")** is a North Carolina corporation.

24. PepsiCo maintains its headquarters and principal place of business in New York.

25. PepsiCo conducts business in a systematic and continuous manner throughout Florida and this District.

26. PepsiCo may be served by service upon its registered agent, **CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324**, or by any other method allowed by law.

27. At all relevant times, PepsiCo exerted operational control over its subsidiaries and alter egos.

28. At all relevant times, PepsiCo substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

29. At all relevant times, PepsiCo had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

30. PepsiCo employed and/or jointly employed, with its subsidiaries and alter egos, Mitchell and the Similarly Situated Workers.

31. PepsiCo and its respective subsidiaries and alter egos are joint employers for purposes of Florida law.

**FACTS**

32. PepsiCo is a food, snack, and beverage corporation.

33. Since at least 2021, PepsiCo has used timekeeping software and hardware operated and maintained by Kronos.

34. On or about December 11, 2021, Kronos was hacked with ransomware.

35. The Kronos hack interfered with its clients, including PepsiCo's, ability to use Kronos's software and hardware to track hours and pay employees.

36. Since the onset of the Kronos hack, PepsiCo has not kept accurate track of the hours that Mitchell and Similarly Situated Workers have worked.

37. Instead, PepsiCo has used various methods to estimate the number of hours Mitchell and Similarly Situated Workers work in each pay period.

38. For example, PepsiCo issued paychecks based on the workers' scheduled hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

39. This means that, in many cases, PepsiCo did not pay these employees their proper wages—or their minimum wages—for all hours they they worked in the workweek.

40. Even if certain overtime hours were paid, the pay rate would be less than the full overtime premium.

41. Mitchell is one such employee.

42. Instead of paying Mitchell for the hours she actually worked, PepsiCo simply paid based on estimates of time or pay, or based upon arbitrary calculations and considerations **other than** Mitchell's actual hours worked and regular pay rates.

43. This resulted in Mitchell being paid for less time than the total amount owed to her under Florida law.

44. In properly calculating and paying employee compensation, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's promised rate of pay, so long as it is at least the minimum wage.

45. PepsiCo knows it has to pay its employees the minimum wage.

46. PepsiCo knows it has to pay its employees their promised wages.

47. PepsiCo knows this because, prior to the Kronos hack, it routinely paid these workers for all hours worked at their agreed rates, which were all at least the applicable minimum wage.

48. PepsiCo knows it has to pay the wages it agreed to pay its employees.

49. PepsiCo knows this because, prior to the Kronos hack, it routinely paid these workers for all hours worked at the rates it agreed to pay them.

50. PepsiCo could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

51. Instead of accurately tracking hours and paying employees wages and overtime, PepsiCo decided to arbitrarily pay these employees, without regard to the wages and overtime they were owed.

52. It was feasible for PepsiCo to have its employees and managers report accurate hours so they could be paid for the work they did for the company.

53. But PepsiCo chose not to do that.

54. In other words, PepsiCo pushed the effects of the Kronos hack onto the backs of their most economically vulnerable workers, making sure that it kept the money owed to those employees in its own pockets, rather than

take steps to make sure its employees were paid on time and in full for the work they did.

55. Mitchell is one of PepsiCo's employees who had to shoulder the burden of this decision by PepsiCo.

56. Mitchell was and is a non-exempt hourly employee of PepsiCo.

57. Mitchell regularly works over 40 hours per week for PepsiCo.

58. Mitchell's normal, pre-Kronos hack hours are reflected in PepsiCo's records.

59. Since the Kronos hack, PepsiCo has not paid Mitchell for her actual hours worked each week.

60. Since the hack took place, PepsiCo has not been accurately recording the hours worked by Mitchell and its other workers.

61. Even though PepsiCo has had Mitchell record and submit her hours, PepsiCo have not issued proper payment for all hours worked.

62. Even when PepsiCo has issued payment to Mitchell for any overtime, the overtime is not calculated based on Mitchell's regular rates, as required by Florida law.

63. PepsiCo was aware of the wage requirements of Florida law.

64. PepsiCo nonetheless failed to pay the full minimum wages and promised wages to its employees, such as Mitchell.

65. PepsiCo's failure to pay all wages owed to these workers was, and is, a willful violation of the .

66. The full overtime wages owed to Mitchell and the Similarly Situated Workers became "unpaid" when the work for PepsiCo was done—that is, on Mitchell and the Similarly Situated Workers' regular paydays.

67. At the time PepsiCo failed to pay Mitchell and the Similarly Situated Workers all minimum wages by their regular paydays, PepsiCo became liable for all prejudgment interest, liquidated damages, penalties, and any other damages owed under Florida law. Fla. Const., Art. X, § 24(a).

68. At the time PepsiCo failed to pay Mitchell and the Similarly Situated Workers all promised wages for their hours by their regular paydays, PepsiCo became liable for all attorneys' fees and costs, and any other damages owed under Fla. Stat. Ann. § 448.104.

69. In other words, there is no distinction between late payment and nonpayment of wages under the law.

70. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law.

71. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to PepsiCo's acts and omissions resulting in the unpaid wages in the first place.

72. Mitchell and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by PepsiCo under Florida law.

### CLASS ACTION ALLEGATIONS

73. Mitchell incorporates all other allegations.

74. The illegal practices PepsiCo imposed on Mitchell were likewise imposed on the Florida Class members.

75. Numerous other individuals who worked for PepsiCo were were not properly compensated for all hours worked, as required by Florida law.

76. The Florida Class is so numerous that joinder of all members of the class is impracticable.

77. PepsiCo imposed uniform practices and policies on Mitchell and the Florida Class members regardless of any individualized factors.

78. Based on her experience and tenure with PepsiCo, as well as coverage of the Kronos hack, Mitchell is aware that PepsiCo's illegal practices were imposed on the Florida Class members.

79. Florida Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

80. PepsiCo's failure to pay wages and overtime compensation in accordance with Florida law results from generally applicable, systematic

policies, and practices which are not dependent on the personal circumstances of the Florida Class members.

81. PepsiCo's failure to pay wages and overtime compensation results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Florida Class members.

82. Mitchell's experiences are therefore typical of the experiences of the Florida Class members.

83. Mitchell has no interest contrary to, or in conflict with, the members of the Florida Class. Like each member of the proposed class, Mitchell has an interest in obtaining the unpaid wages and other damages owed under the law.

84. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

85. Absent this action, many Florida Class members likely will not obtain redress of their injuries and PepsiCo will reap the unjust benefits of violating Florida law.

86. Furthermore, even if some of the Florida Class members could afford individual litigation against PepsiCo, it would be unduly burdensome to the judicial system.

87. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

88. The questions of law and fact common to each of the Florida Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether the Florida Class members were not paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek; and

   b. Whether PepsiCo's failure to pay overtime at the rates required by law violated Florida law.

89. Mitchell's claims are typical of the Florida Class members. Mitchell and the Florida Class members have all sustained damages arising out of PepsiCo's illegal and uniform employment policies.

90. Mitchell knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

91. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class action treatment.

## FIRST CAUSE OF ACTION—
## VIOLATION OF FLORIDA CONSTITUTION, ART. X, SEC. 24

92. Mitchell incorporates all other allegations.

93. The conduct alleged in this Complaint violates Florida Constitution, Art. X, Sec. 24.

94. PepsiCo was and is an "employer" within the meaning of Florida Constitution, Art. X, Sec. 24.

95. At all relevant times, PepsiCo employed Mitchell and the other Class members as "employees" within the meaning of Florida Constitution, Art. X, Sec. 24.

96. Florida Constitution, Art. X, Sec. 24. requires an employer like PepsiCo to pay applicable minimum wages to all non-exempt employees.

97. Mitchell and the Florida Class members are non-exempt employees who are entitled to be paid minimum wages for all hours worked.

98. Within the applicable limitations period, PepsiCo systematically and willfully did not pay Mitchell and the Florida Class the minimum wages to which they are entitled under Florida law.

99. PepsiCo should have instituted a mechanism to properly track all hours work and ensure Mitchell and the Florida Class members were paid at least the applicable minimum wage for all hours worked.

100. Under Florida law, Mitchell and the Florida Class are entitled to: injunctive relief, the recovery of the full amount of unpaid minimum wages owed, liquidated damages, costs, attorneys' fees, and to any other relief which this Court deems just and proper.

### SECOND CAUSE OF ACTION— BREACH OF AGREEMENT/UNPAID WAGES

101. Mitchell incorporates all other allegations.

102. Mitchell and the Florida Class had an agreement with PepsiCo that they would be paid a specific hourly wage for each hour they worked as an employee of PepsiCo.

103. PepsiCo has breached its agreement by failing to pay Mitchell and the Florida Class for all hours worked at the specific hourly wages promised.

104. Mitchell and the Florida Class have been damaged as a result of PepsiCo's failure to pay wages to which Mitchell and the Florida Class are entitled under their agreement.

105. Pursuant to Fla. Stat. §448.08, in an action for accrued but unpaid wages, Mitchell and the Florida Class are entitled to costs of the action and a reasonable attorney fee.

### RELIEF SOUGHT

Mitchell prays for judgment against PepsiCo as follows:

   a.   For an order certifying a class action for the Florida law claims;

 b. For an order finding PepsiCo liable for violations of state wage laws with respect to Mitchell and all Florida Class members covered by this case;

 c. For a judgment awarding all unpaid wages, liquidated damages, and penalties, to Mitchell and all Florida Class members covered by this case;

 d. For an equitable accounting and restitution of wages due to Mitchell and all Florida Class members members covered by this case;

 e. For a judgment awarding attorneys' fees to Mitchell and all Florida Class members covered by this case;

 f. For a judgment awarding costs of this action to Mitchell and all Florida Class members covered by this case;

 g. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Mitchell and all Florida Class members covered by this case; and

 h. For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Kimberly De Arcangelis*
Kimberly De Arcangelis, Esq.
Bar No.:  0025871
*Lead Counsel for Plaintiffs*
C. Ryan Morgan, Esq.
Bar No.:  0015527
Morgan & Morgan, P.A.
20 N. Orange Ave., 15th Floor
Orlando, Florida 32801
Telephone: (407) 420-1414
Facsimile: (407) 245-3383
Email:  kimd@forthepeople.com
   rmorgan@forthepeople.com
*Trial Attorneys for Plaintiffs*